JjYELVERTON, Judge.
This appeal arises out of a suit by Stacey and Scott Brouillette for an action in redhibition or in the alternative a reduction in the purchase price of their home due to termite infestation and damage. These parties were before us in 1994. Brouillette v. Ducote, 93-990 (La.App. 3 Cir. 3/2/94), 634 So.2d 1243. The Brouillettes had sued Mrs. Bernice Du-cote and her three major daughters alleging that the home they purchased on December 1, 1991, had extensive, hidden termite damage. The Ducotes filed a third-party claim against Emanuel Morris, the pest |2control operator who treated the home and issued two termite inspection certificates prior to the sale. The Brouillettes also added a claim against Morris. Mrs. Ducote died before the case went to trial, and her succession administrator was named as a defendant.
At the close of the plaintiffs’ case, the trial court granted the defendants’ motion for involuntary dismissal, but awarded the Brouil-lettes $1,000 that had been placed in escrow at the time of the sale. On the first appeal this court affirmed the judgment of the trial court which dismissed the Brouillettes’ claim in redhibition against the vendors and the claim in contract against Morris. This court reversed the judgment insofar as it dismissed the Brouillettes’ claim in tort against Morris and in quanti minoris against the vendors. The case was then remanded.
On remand no further evidence was introduced. The trial court awarded a reduction in the purchase price of the house against Mrs. Ducote’s estate in the amount of $3,656. The trial court found that only Mrs. Ducote was in bad faith and awarded the Brouillettes $500 as attorney’s fees against her estate. The estate of Mrs. Ducote was given a credit in the amount of $1,000 for the amount held in escrow. All other claims of the Brouil-lettes were rejected.
The Brouillettes appeal the judgment raising several issues. They claim that the trial court should have found Morris negligent. They claim the trial court also erred in finding only Mrs. Ducote’s estate liable on the quanti minoris claim, urging that the court should have found her three daughters, who were co-owners with their mother, also liable for damages and attorney’s fees. They contend that the award for attorney’s fees was too low. Finally, the Brouillettes argue that they are entitled to an award of general damages.
_JjThe Ducotes answered the appeal alleging that the trial court erred in finding Mrs. Ducote’s estate liable and in not finding Morris negligent. The Ducotes allege that the trial court erred additionally in finding Mrs. Ducote was in bad faith. Finally, they claim that they are entitled to credit for interest on the $1,000 the Brouillettes received at the time of the sale.
FACTS
The facts as narrated by another panel of this court in the first appeal have not changed. On remand the record was untouched. We will simply quote the facts as *313 pronounced in Brouillette, 634 So.2d at 1245-1246, for the convenience of the reader.
In August of 1991, Mrs. Bernice Dueote asked Emanuel Morris to inspect the home in question for possible termite infestation and damage. Morris found evidence of active termite infestation with damage to ceiling tiles, molding and paneling in the bathroom and near the fireplace. He treated the infestation problem and put the home under a standard pest control contract, guaranteeing his treatment for one year. He also presented Mrs. Dueote with a hand-drawn diagram of the house, marking the areas where he found active infestation and damage. This diagram or ‘graph’ was signed by Mrs. Dueote and was attached to the standard contract form. However, the ‘graph’ was not given to the Brouillettes or to their closing attorney at the time of the sale, although the contract form was. After Mrs. Ducote’s death, the original graph drawn by Morris was found among her effects.
Mrs. Dueote contacted Morris again in October of 1991, asking him to issue a ‘wood destroying insect report’ that was required for the sale of the house. Morris eventually prepared two such reports, one with an inspection date of October 9, 1991, the other with an inspection date of November 25, 1991. It is undisputed that Morris did not actually inspect the Dueote home on either of those two dates. On the inspection form, which is supplied by the State of Louisiana, Morris checked off block 9C with the | potation, ‘Visible evidence of subterranean termites was found. Proper control measures were performed.’ However, Morris did not fill in block 9E which required a listing of areas where visible damage had been found.
The Brouillettes began living in the home in September of 1991, but the act of sale was not passed until December 1, 1991. They testified that the only damage they observed in the home before the sale were discolored ceiling tiles and a leak in the toilet. They testified that at the closing, they saw the words ‘subterranean termites’ on the inspection certificate prepared by Morris, but they were assured by Mrs. Dueote that the problem had been remedied by treatment.
Stacey Brouillette testified that she first became aware of a termite problem approximately four months after the sale, in ' March or April of 1992, when she came home one day and found termites in every room of the house. Since then, the house has been continuously infested with termites.
When the Brouillettes first saw the termites in their home, they immediately contacted Morris who showed them the ‘graph’ that he had prepared for Mrs. Du-cote. This was the first time that the Brouillettes had seen that document. According to Scott, the termites appeared to be coming from the same wall where Morris had indicated active infestation on the graph. After having Morris retreat the home, the Brouillettes contacted Brent Scallan, a building contractor, to determine the full extent of the termite damage, if any. Scallan removed ceiling tiles, paneling and insulation throughout the house and observed several hidden points of entry for the termites, particularly in the bathroom area. He found moisture damage, as well as termite damage in the joists, ceiling, moldings and rafters. He estimated that repair of the damaged areas would cost approximately $3,646.
James Arceneaux, who served as the director of the Structural Pest Control Commission of Louisiana for 10 years, testified as an expert on behalf of the plaintiffs. Arceneaux inspected the Brouillette home on February 23, 1993, after Scallan had removed the paneling and fascia boards. Arceneaux found active infestation, as well as extensive damage throughout the house, including wooden studs and rafters near the fireplace, and the dining area, the attic and bathroom. In his opinion, the extensive damage |5found indicated that, more probably than not, the termites were in the house in December of 1991.
Arceneaux also expressed his opinion on the standard of care owed by a pest control operator in preparing a wood destroying insect report. Arceneaux served on the committee that drafted the state ter *314 mite inspection reports. He testified that Morris fell below the standard of care when he failed to fill in section 9E of the report dealing with visible evidence of termite damage.
LIABILITY
The issue of liability with regard to all parties to this action has been raised on appeal. However, when this case was first presented to this court, we decided at that time that Morris’ conduct fell below the standard of care owed to the Brouillettes. Brouillette, 634 So.2d 1243. We also found that had the Brouillettes been provided with information regarding the areas of depicted damage, they would have been provided with enough information to warrant their own investigation of the home’s condition. Id.
This court also found that the Ducote vendors were liable for the quanti minoris claim of the Brouillettes. This court found that the Brouillettes were not charged with expertise in pest control, and because essential information was withheld from them, the termite infestation and damage was not discoverable by simple inspection. Brouillette, 634 So.2d 1243. This court further found that at least one vendor, Mrs. Ducote, was aware of the defect and failed to disclose it prior to the sale. Id. The court therefore found all vendors liable for the quanti minoris claim of the Brouillettes.
| eThe Ducote vendors are solidarily liable for the damages in quanti minoris as co-owners. The Civil Code states that co-owners share the fruits and products of the thing held in indivisión in proportion to their ownership but contains no provision for the sharing of liability. La.Civ.Code art. 798. Therefore, the daughters are solidarily liable with the estate of their mother for the reduction ip the sales price.
 The case was remanded to the trial court for presentation of defense and rebuttal evidence. Once it was remanded the defendants presented no additional evidence. Therefore, our ruling in Brouillette, 634 So.2d 1243, stands. The trial court should have found Morris liable in solido with the Ducote vendors for the quanti minoris damages sustained by the Brouillettes. The Brouillettes have no liability in this matter.
BAD FAITH
The Ducotes claim that the trial court erred in finding that Mrs. Ducote was in bad faith. As stated previously, this court in the first appeal found that there was evidence Mrs. Ducote was aware of the defect and failed to disclose it. No evidence was offered in defense of this finding. The trial court found that Mrs. Ducote was in bad faith. We find no error in the finding of the trial court.
The trial court should also have found Mrs. Ducote’s three daughters liable in solido with her for the damages sustained as a result of Mrs. Ducote’s bad faith. The testimony in the record reveals that Mrs. Ducote was acting as an agent on behalf of her daughters in the sale of this house.
|7In Collins v. Slocum, 317 So.2d 672 (La.App. 3 Cir.), writs refused, 321 So.2d 362, 363, 364 (La.1975), this court held that the knowledge of a vendor who acted as agent for other vendors was chargeable to the other vendors. See also Marpco, Inc. v. South States Pipe & Supply, 377 So.2d 525 (La.App. 3 Cir.1979); Richardson v. Stan Weber & Associates, Inc., 400 So.2d 1196 (La.App. 1 Cir.1981); and Cummings v. Wafer, 499 So.2d 184 (La.App. 2 Cir.1986). Mrs. Du-cote’s knowledge and notice of the termite infestation and damage, as agent for her daughters, must be imputed to her daughters. The daughters are solidarily liable with their mother for attorney’s fees and damages awarded pursuant to La.Civ.Code art. 2545.
DAMAGES
No party has complained about the amount awarded to the Brouillettes as a reduction in the purchase price, $3,656 less the $1,000 credit in favor of the estate of Bernice Ducote held in escrow. However, the Ducote vendors have alleged that the credit given for the $1,000 should have included legal interest. They cite no authority. The testimony by the attorney indicated that $225 was spent on repairs to the ceiling, and the remaining $775 has remained in the law firm’s escrow *315 account. The Brouillettes have not had the benefit of this money, so no reason exists why interest should be awarded.
The Brouillettes claim that they are entitled to general damages for the mental anguish and inconvenience they have suffered as a result of the termite infestation and damage. The trial court found that the Brouillettes had not suffered any general damages. This was clearly wrong.
IgTestimony by the Brouillettes revealed that Mr. Brouillette came home one day to find his wife crying and upset. There were winged bugs all over the floor. Morris came to the house to examine the problem and eventually ceiling tiles, paneling, and insulation were removed. It was at this time that major termite damage was revealed. For several months, the Brouillettes could not sleep in their bedroom and had to sleep on a mattress on the floor in the living room because mud from the termites was falling from their ceiling onto the bed. This testimony was unrefuted and was corroborated.
The record establishes that this has been a traumatic experience for this couple; they were very excited about their first home. The trial court was clearly wrong in fading to award general damages for mental anguish and inconvenience. The lowest award that the trial court could have awarded to the Brouillettes was $2,500 each. Morris is obligated in tort to pay general damages and the vendors are liable pursuant to Article 2545 for general damages. Therefore, we find that Morris and the Ducote vendors are also solidarily liable in the amount of $2,500 to each of the Brouillettes, a total of $5,000, in general damages.
ATTORNEY’S FEES
Attorney’s fees are not allowed except where authorized by statute or contract. Ferrier v. Jordache-Ditto’s, 94-1317, 94-1318 (La.App. 3 Cir. 5/17/95), 662 So.2d 14. As we have already stated, the Ducote vendors are liable for attorney’s fees pursuant to Article 2545. There is neither statutory nor contractual authority that allows us to impose an award of attorney’s fees against Morris. Therefore, Morris is not liable with the vendors for attorney’s fees.
| ¡The trial court awarded $500 in attorney’s fees to the Brouillettes. The Brouillettes claim that is abusively low. We agree. This is the second time that the Brouillettes have had to come to this court for relief. Additionally, the presentation of evidence in the trial court consisted of deposition testimony taken on four separate days and an additional trial court appearance on remand. We find that $3,500 is a more appropriate award for the work done at the trial level. We also find that $1,500 is an appropriate award for the work done at the appellate level.
DECREE
For the above reasons the judgment of the trial court is reversed in its failure to award general damages. The judgment is amended to increase the award of attorney’s fees. The judgment is further amended to provide liability for the awards as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of plaintiffs, Scott Michael Brouillette and Stacey Kelly Brouillette, and against the Estate of Bernice Ducote, Pamela Ducote Ruemker, Mary Lucille Ducote Daigrepont, Paula Ann Ducote Parenton, Emanuel Morris, d/b/a Morris Pest Control, and Louisiana Pest Control Insurance Company, in solido, in the amount of $3,656 as a reduction in the purchase price, and in the amount of $5,000 for general damages for mental anguish and inconvenience, with legal interest thereon from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Scott Michael Brouillette and Stacey Kelly Brouillette, and against the Estate of Bernice Ducote, Pamela Ducote Ruemker, Mary Lucille | ipDucote Daigrepont, and Paula Ann Ducote Parenton, in solido, in the amount of $5,000 as attorney’s fees, with legal interest on said sum from April 7, 1995, until paid.
In all other respects the trial court judgment is affirmed.
*316 Costs at trial and on appeal are assessed one-half to the Ducote side and one-half to Morris.
REVERSED IN PART; AMENDED AND AFFIRMED.
AMY, J., dissents in part and assigns ■written reasons.